IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL L. COUNCELL and CHARLES E. COUNCELL,

      Plaintiffs,

v.                        Civil Action No. 5:11CV45
                                  (STAMP)

THE HOMER LAUGHLIN CHINA COMPANY,
aka HLC, aka HOMER LAUGHLIN,
aka FIESTAWARE, aka HOMER LAUGHLIN CHINA,
aka NEWELL BRIDGE AND RAILWAY CO.,

      Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO REMAND,
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS,
GRANTING PLAINTIFFS' MOTION FOR
LEAVE TO FILE AN AMENDED COMPLAINT
AND DENYING AS MOOT
DEFENDANT'S MOTION TO STRIKE**


I.  Procedural History

The husband and wife plaintiffs filed this civil action in the Circuit Court of Hancock County, West Virginia on March 3, 2011. The plaintiffs seek compensatory and punitive damages, and attorney's fees and costs from the defendant, Homer Laughlin China Company (hereinafter "HLC"), the wife plaintiff's former employer, as a result of Ms. Councell's termination.

The complaint alleges that the plaintiffs are citizens of Ohio and that HLC is incorporated in Delaware with its principle place of business in Newell, West Virginia. The complaint also avers that HLC discriminated against Mrs. Councell based upon her age,

gender, and/or disability when it terminated her employment. Count II of the complaint alleges that, in addition to the other discriminatory reasons for her termination, adverse employment decisions were also premised upon recent claims that the plaintiffs had made to HLC's health insurance plan.

On March 21, 2011, the defendant removed the action to this Court on the basis of both federal question and diversity jurisdiction. The defendant argued that there was complete diversity on the face of the plaintiffs' complaint because the Councells were citizens of Ohio and HLC is domiciled in Delaware and West Virginia, and that the amount in controversy was more than $75,000.00. Additionally, HLC contended that Count II of the plaintiffs' complaint raised a claim that is completely preempted by the Employee Retirement Income Security Act (hereinafter "ERISA"), specifically § 510 of the Act, 29 U.S.C. § 1140.

The plaintiffs filed a motion to remand on May 9, 2011, arguing that neither diversity nor federal question jurisdiction exists in this case. They assert that HLC cannot remove this action based upon diversity jurisdiction because of the forum defendant rule, as its principle place of business is in the state of West Virginia. They also claim that there is no ERISA claim because they have not pled ERISA, nor is their claim of insurance discrimination preempted by ERISA.

The defendant responded by arguing that the plaintiffs have waived any forum defendant rule argument that may have been available to them because they failed to file a motion to remand within 30 days of removal, as is required by 28 U.S.C. §1447(c). Additionally, the argument that the plaintiffs' insurance discrimination claim is preempted by ERISA § 510 was renewed in more detail. The plaintiffs replied to the response arguing that Count II of their complaint is not an ERISA claim, and that the forum defendant rule is a substantive subject matter jurisdictional issue and thus is not waived by filing to remand more than 30 days after removal. In any case, they argue, letters were written to HLC within the 30 days and reference to remanding the action was made in the plaintiffs' response to the defendant's motion to dismiss, thus the matter was preserved even if it is a procedural issue.

The defendant also filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss and Federal Rule of Civil Procedure 12(f) motion to strike to which the plaintiffs responded in opposition and with and alternative motion to amend the complaint. The defendant argues that each of the claims in the plaintiffs' complaint contains only legal conclusions and fails to assert sufficient facts to support those statements. HLC also advances that Count III, which alleges wrongful personnel file documentation, is not a viable cause of action under West Virginia

or federal law, nor is Count VI, a count of spoliation, a viable claim in the context in which it is asserted here. The defendant does not, however appear to include Count VII of the complaint, an allegation of violation of the West Virginia Human Rights Act, in its motion to dismiss.

The plaintiffs, in response, alleged that they have met their burden to survive defendant's Rule 12(b)(6) motion because sufficient facts have been alleged to the best of their knowledge before discovery has taken place. Additionally, they argue that all causes of action in the complaint are cognizable under West Virginia law. Finally, the defendant filed a reply brief.

The motion to remand and motion to dismiss and to strike have now been fully briefed and are ripe for disposition. For the reasons stated below, this court denies the plaintiffs' motion to remand and grants in part and denies in part the defendant's motion to dismiss. The Court also grants the plaintiffs' motion to file an amended complaint, and accordingly denies the defendant's motion to strike as moot.

## II.  Facts[1]

The wife plaintiff in this case, Carol Councell, was employed by HLC for approximately 15 years when she was terminated at the age of 58 on November 2, 2010. Throughout her employment, Ms.

---

[1]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiffs in their complaint.

Councell was not sanctioned, disciplined or otherwise criticized for poor attendance. She also allegedly possessed the ability to and did perform her job in a satisfactory manner throughout most of her career. At some time prior to her termination, Ms. Councell and her husband, Charles Councell allegedly began to suffer from undisclosed health problems. Ms. Councell's ailments necessitated medical intervention and work interruption. Additionally, both plaintiffs began to make claims to HLC's health insurance plan to which they were both participants and to which Ms. Councell contributed $50.00 per month. Mr. Councell specifically made claims for knee, wrist, and ankle surgeries, kidney treatments, and post-traumatic stress disorder therapy.

The plaintiffs contend that, due to Ms. Councell's age, gender, and her alleged disability, as well as because the Councells were making claims to the company health insurance plan, HLC, through its managers and personnel, began to make false notations in Ms. Councell's file in order to "build the record" to terminate her. The Councells also argue that, despite this negative performance documentation in Ms. Councell's file, her productivity had not decreased. Finally, the plaintiffs argue that, in order to attempt to force Ms. Councell to resign from her position, HLC created a "culture of mean-spirited, age based, gender based, and disability based discrimination." The plaintiffs

argue that Ms. Councell was eventually terminated due to these discriminatory motivations.

### III.   Applicable Law

#### A.   Motion to Remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. § 1441.  Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a).  The party seeking removal bears the burden of establishing federal jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand.  Id.

#### B.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiffs' complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations

contained in the complaint as true. <u>Advanced Health-Care Servs.,</u> <u>Inc. v. Radford Cmty. Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" <u>Id.</u> at 143-44 (quoting <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969)); <u>see also</u> <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007).

### IV. <u>Discussion</u>

A. <u>Motion to Remand</u>

The defendant removed this action based upon both 28 U.S.C. § 1331 federal question and 28 U.S.C. § 1332 diversity jurisdiction. The Court will address each jurisdictional basis asserted in turn.

Federal jurisdiction based upon 28 U.S.C. § 1331 requires that a question "arising under the Constitutions, laws, or treaties of the United States" be present on the face of the plaintiff's well pleaded complaint. However, there is an exception to the well pleaded complaint rule in cases where a plaintiff's complaint contains state law causes of action which are subject to complete preemption by federal law. In these situations, the state law cause of action actually pled "transform[s]" into a federal claim by operation of law, and removal is proper. See Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005).

Complete state law preemption is extremely rare. In fact, ERISA, specifically §§ 502 and 514 of ERISA, is one of only three federal statutes that have been found to completely preempt state law. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64-66 (1987); Lontz, 413 F.3d at 441 (remarking that the United States Supreme Court has found that only three federal statutes that create complete preemption, National Bank Act, ERISA § 502, and Labor Management Relations Act).

HLC argues that the plaintiffs' claim in Count II is preempted by ERISA § 510, 29 U.S.C. § 1140. This section of ERISA is part of subchapter 1 of the statute, the individual cause of action for which is created by § 502. Thus, if this court finds that the plaintiffs' cause of action in Count II falls within the scope of § 510, no state law claim in Count II can exist, and the Councells'

claim is an ERISA claim -- a federal cause of action on the face of the plaintiffs' well pleaded complaint -- whether it was pled that way or not. This Court finds that it does, and this is an ERISA claim, removable under § 1331.

Employee Retirement Income Security Act § 510 makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . ." 29 U.S.C. § 1140 (emphasis added). The plain language of the section, which has been emphasized above, clearly and directly encompass the activity alleged in Count II of the plaintiffs' claim. Count II claims that

> 47. HLC discriminated against Mr. and Mrs. Councell and terminated Mrs. Councell as described herein because of the aforementioned reasons and also because she began to make claims to the health insurance program.
>
> 48. But for Mrs. Councell's claims to the health insurance program HLC would not have taken the adverse employment decision against her.
>
> 49. Mrs. Councell's claims to the health insurance program were a substantial, motivating, and determining factor in HLC's decision to terminate her employment.

On the face of Count II, it seems clear that the plaintiffs are alleging exactly the type of activity proscribed by § 510; Ms. Councell's employer terminated her because she made claims to her employee health insurance program. The plaintiffs suggest that, in order to fall under the scope of § 510, wrongdoing would need to be alleged against the insurance company through which the HLC health

insurance plan operates, and that preemption can only occur when a plaintiffs are seeking to recover plan benefits. This is not correct. First, even if seeking plan benefits was a necessary element of ERISA preemption, the plaintiffs would have satisfied it here, as in paragraph 54[2] it is asserted that "HLC owe [sic] health insurance to Mr. and Mrs. Councell and said claim is hereby made." However, while this claim is made, it is not necessarily a necessary one for ERISA to preempt the plaintiffs' claim. In Ingersoll Rand Co. v. McClendon, 498 U.S. 133, 140, the Supreme Court held that all claims alleging under state law that an "employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under" the covered employee benefit plan are completely preempted by ERISA. The plaintiffs allege just this in Count II.

Finally, an employee health insurance plan to which an employee contributes and to which she is entitled benefits is a covered employee benefit plan. Title 29, United States Code, Section 1002 defines the term "employee welfare benefit plan," which is encompassed in the general term "employee benefit plan," as "any plan, fund, or program which was . . . maintained by an employer or an employee organization, or by both to the extent that

_____

[2]This Court cites to what it believes to be "paragraph 54." However, the structure of the complaint is such that it could possibly be better described as "line 54." Whatever the case, the cited language may be found on page 4 of the complaint, listed next to "54."

such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise." In fact, a recent case before this district, which is strikingly factually similar, found an employee health insurance plan to be an "employee benefit plan" under ERISA without any discussion on the issue. See <u>Henry v. UBC Product Support Center, Inc.</u>, 2008 U.S. Dist. LEXIS 104116, at *9 (N.D. W. Va. Dec. 24, 2008) ("[e]mployee benefit plans include health insurance plans"). The facts of <u>Henry</u> are indeed so strikingly similar that they bare summarizing. In <u>Henry</u>, the court found that the plaintiff was alleging that she and her husband were disabled and had been claiming from the defendant employer's health insurance plan "to cover their significant medical expenses, and that their significant use of that plan was a motivating factor for the defendants's [sic] discriminatory acts [in terminating the plaintiff]." <u>Id.</u> The defendant employer had claimed ERISA preemption of the claim, and the court agreed.

Under these similar facts, this Court too agrees with the defendant's argument that Count II of the complaint is completely preempted and is an ERISA claim, thus § 1331 federal question jurisdiction exists over this case. However, even if ERISA preemption did not apply, this Court would nonetheless have proper jurisdiction over this action under 28 U.S.C. § 1332.

Section 1332 diversity jurisdiction requires both complete diversity of parties and the jurisdictional minimum amount in controversy of $75,000.00. If diversity jurisdiction as required by § 1332 exists in an action, a defendant who is sued in state court may, under 28 U.S.C. § 1441, properly remove the action to the federal court of the district in which the forum state court sits. Neither party in the present action challenges the existence of the § 1332 requirements in this motion to remand; the parties acknowledge that more than $75,000.00 is in controversy and that the plaintiffs are citizens of Ohio, while the defendant is a Delaware corporation with its principle place of business located in West Virginia.[3]

However, a defendant's ability to remove based upon diversity jurisdiction is limited by 28 U.S.C. § 1441(b). This statute, more commonly known as the forum defendant rule, is "separate and apart from the statute conferring diversity jurisdiction . . .[and] confines removal on the basis of diversity to instances where no defendant is a citizen of the forum state." <u>Lively v. Wild Oats Markets, Inc.</u>, 456 F.3d 933, 939 (9th Cir. 2006), and <u>see</u> § 1441(b). As HLC is a domiciliary of West Virginia for jurisdictional purposes, the plaintiffs argue that the diversity grounds for removal are defective and that remand is the proper

---

[3]Corporations are domiciliaries of both the state in which they are incorporated, and the state in which they operate their principle place of business. 28 U.S.C. § 1332(c).

remedy.  The defendant does not dispute the fact that it is a citizen of West Virginia or that the removal based upon diversity jurisdiction in this case was defective due to the forum defendant rule.  Rather, HLC argues that the plaintiffs waited too long to challenge this defect in removal, and have waived their right to remand on these grounds as a result.

Motions challenging removal can be premised on two different justifications for remand (1) a lack of subject matter jurisdiction and (2) a procedural removal defect outside of a lack of subject matter jurisdiction.  See Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008).  Under 28 U.S.C. § 1447(c), when a motion to remand is premised on a lack of subject matter jurisdiction, it may be filed and entertained by the court at any time, but "where remand would be justified by a defect in removal other than a lack of subject matter jurisdiction, the defect must be asserted by a motion to remand filed within 30 days" of removal.  Id.  Any remand motion pointing to a procedural defect that is filed more than 30 days after removal is deemed waived and must be denied.  HLC removed this action on March 21, 2011 and the Councells did not file a motion to remand until May 9, 2011, 49 days after removal.  Thus, whether the right to challenge removal based upon § 1447(c) was waived turns entirely on whether removal violative of the forum defendant rule is a procedural defect or amounts to a complete lack of subject-matter jurisdiction.

13

In support of removal jurisdiction, the defendant argues very simply that removal in violation of § 1441(b) is a defect in removal procedure rather than a substantive defect in jurisdiction, and cites a number of cases in to support that fact. In reply to HLC's assertion, the plaintiffs argue that § 1441(b) is a substantive requirement for removal jurisdiction just as residency of the defendant is a substantive requirement of diversity jurisdiction. They also maintain that case law supports this position.

Although the United States Court of Appeals for the Fourth Circuit has yet to rule on this question, ten circuit courts have had occasion to address it. Of the ten circuits that have spoken on the issue, nine have found that removal by a forum defendant is a procedural defect, and thus waivable. See Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18, 22 (1st Cir. 1987); Handelsman v. Bedford Vill. Assocs., 213 F.3d 48 (2d Cir. 2000); Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, n.3 (3d Cir. 1999); In re Shell Oil Co., 932 F.2d 1518 (5th Cir. 1991); Handley-Mack Co. v. Godchaux Sugar Co., 2 F.2d 435, 437 (6th Cir. 1924); Hurley v. Motor Coach Indus. Inc., 222 F.3d 377, 380 (7th Cir. 2000); Lively v. Wild Oats Markets, Inc., 456 F.3d 933 (9th Cir. 2006); Am. Oil Co. v. McMullin, 433 F.2d 1091 (10th Cir. 1970); Pacheco de Perez v. AT&T Co., 139 F.3d 1368 (11th Cir. 1998). Additionally, other district courts within the Fourth Circuit have found violations of

the forum defendant rule to be procedural.  See Ada Liss Grp. v. Sara Lee Branded Apparel, 2007 U.S. Dist. LEXIS 13497, 12-13 (arguing that it appears clear that the Fourth Circuit would follow the majority and find violation of § 1441(b) procedural).  For the following reasons, this Court does the same.

The majority rule is well illustrated by the Ninth Circuit opinion in Lively.  In that case, the court took an in-depth look at both the holdings of other circuit courts and at the legislative history of § 1447(c) and the policy rationale behind § 1441(b) in reaching its decision that the forum defendant rule was procedural. The amendment process of § 1447(c) which eventually led to its current language is particularly informative.  The original language of the section required remand at any time if a court found that a case was "removed improvidently and without jurisdiction."  See Lively, 456 F.3d at 939 (quoting § 1447(c) (1948)).  The 1988 amendment to the section, intended to clear up ambiguities in the word "improvidently," required a motion to remand "on the basis of any defect in removal procedure" to be made within 30 days.  This language was further altered in 1996 due to a determination that the original language was ambiguous, to require motions for remand based upon "any defect other than lack of subject matter jurisdiction" to be filed within 30 days.  Id. The Lively court endorsed the Eleventh Circuit's reading of this legislative history in Snapper, Inc. v. Redan, 171 F.3d 1254-59

(11th Cir. 1999), that interpreted the changes made to the section to indicate Congress's intent to "ensure that even the 'more substantive' removal defects, such as § 1441(b) violations, were subject to the 30 day time limit." 456 F.3d at 939. This Court too finds this reading to be persuasive. In removing the original language progressively substituting it with broader language, eventually to describe the only type of defect <u>not</u> subject to the 30 day rule, Congress was clearly intending to sweep a broader brush with § 1447(c) and to include at least some types of "improvident" removal as waivable defects.

Additionally, this Court joins the <u>Lively</u> court in the finding that this reading of Congress's intent is strengthened by the purpose of the forum defendant rule. The forum defendant rule exists due to the basic premise behind diversity jurisdiction itself. Section 1332 jurisdiction is designed as a protection for out-of-state litigants from possible bias in favor of in-state litigants in state court. <u>See</u> <u>Guar. Trust Co. v. York</u>, 326 U.S. 99, 111 (1945), and <u>Ziady v. Curley</u>, 396 F.2d 873, 875 (4th Cir. 1968). Removal based upon diversity serves this purpose in that an in-state plaintiff may not utilize her position as master of the case to keep an out-of-state defendant in state court in order to take advantage of local bias. However, the protection upon which removal based upon diversity is premised is not an issue when an out-of-state plaintiff chooses to brings a suit in the state where

the defendant is a citizen.  Therefore, the forum defendant rule exists to allow the plaintiff to retain a certain amount of control over her case when such concerns about local bias in her favor are not at issue.

Nonetheless, if diversity jurisdiction exists and a defendant removes a case in violation of the forum defendant rule, neither party will be prejudiced if the case were to remain there, and the plaintiff may still exercise control over the case by moving for remand.  Lively, 456 F.3d at 940.  It is at this point in the analysis that the procedural nature of the forum defendant rule becomes apparent.  While diversity jurisdiction does exist, the plaintiff is given control over the forum in which she chooses to litigate her case because the purpose of diversity jurisdiction is not necessarily furthered by allowing the defendant to remove. Still, because diversity exists, federalism is not injured, and judicial efficiency is promoted, if the power to remand expires after 30 days.

This Court has also considered the minority opinion, held only by the Eighth Circuit and advanced by the plaintiffs here, and has found it to be unpersuasive.  In Hurt v. Dow Chemical Co., 963 F.2d 1142 (8th Cir. 1992), the Eighth Circuit found that § 1441(b) actually limits the breadth of diversity jurisdiction in removal cases to when the defendant is non-citizen of the forum state.  The court reasoned that, because the "jurisdiction of the lower federal

courts . . . is entirely a creature of statute . . [i]f one of the statutory requirements is not met, the district court has no jurisdiction." Id. at 1145. While this Court agrees with the Eighth Circuit that all statutory requirements of jurisdiction must be met for jurisdiction to exist based upon the above analysis, it cannot agree that § 1441(b) is one of those requirements. Therefore, this Court finds that failure to comply with forum defendant rule is a procedural defect and the ability to remand based upon violation of § 1441 is waivable under § 1447(c).

The plaintiffs also argue that, even if failure to comply with § 1441 is a procedural defect of removal, they have not waived their right to remand because the defect was mentioned both in letters to the defendant asking it to remand voluntarily, and in the body of the plaintiffs' response to the defendant's motion to dismiss. The Court disagrees. Counsel for the plaintiffs contacted counsel for the defendant via letter on April 19, 2011 and April 22, 2011 requesting that she voluntarily remand this case due to lack of federal jurisdiction, and expressing intent to file a motion to remand if she failed to do so. Additionally, footnote 1 of plaintiffs' memorandum in opposition to the defendant's motion to dismiss and to strike, filed on April 18, 2011, contains a discussion of the fact that the defendant had violated the forum defendant rule by removing this case. However, neither of these objections to the removal satisfy the requirements of § 1447(c),

the language establishing these being the epitome of clear and plain.  The section states plainly: "a <u>motion to remand</u> the case on the basis of any defect other than the lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal."  28 U.S.C. §1447(c) (emphasis added).

The letters sent to defense counsel asking her to remand, only one of which would have been timely, were not filed with the Court or even sent to the Court in any capacity until they were attached as exhibits to the plaintiffs' memorandum, and thus cannot qualify as motions to remand by any stretch of the imagination. Additionally, the remand discussion in the plaintiffs' brief could arguably be construed as having been intended to be a motion to remand were plaintiffs' counsel's words not so clear in communicating the opposite intent.  In discussion of the plaintiffs' position that this case was wrongly removed, counsel clearly states "A separate Motion to Remand will be filed."  Thus, doubt that may have allowed for a finding that this discussion was intended to be a motion to the Court to remand this action is eliminated.  Neither of these communications can be fairly construed as a motion to remand, as is required to preserve objections to procedural defects to removal under § 1447(c). Removal jurisdiction in this case exists under both 28 U.S.C. §§ 1331 and 1332, and the plaintiffs' motion to remand is hereby denied.

B.  Motion to Dismiss

The plaintiffs' complaint asserts seven separate claims, and a derivative claim for loss of consortium.  HLC moves for the first six of the seven claims to be dismissed, as well as the loss of consortium claim raised by Mr. Councell.[4]  The Court will analyze each of the counts in the order in which they were raised by the plaintiffs in their complaint.

Count I is a claim for unlawful discrimination based upon Ms. Councell's gender, age, and disability.  In support of this claim, the Ms. Councell alleges that (1) she is female, was 58 years-of-age when she was terminated and suffers or suffered from health problems which required medical intervention and missed time from work, (2) that her employment history at HLC had been without incident regarding either attendance or performance in the years before she was terminated, (3) that there was no change in the business or profitability of HLC following Ms. Councell's termination, (4) that HLC management and personnel created a culture of anger and age-based, gender-based, and disability-based

_____

[4]The Court is unable to discern whether the defendant moved to dismiss Count VII - Violation of West Virginia Human Rights Act, because, while mentioned in the motion to dismiss along with claims that the plaintiffs fail to "state a single claim," the defendant does not discuss Count VII in its explanation of why each claim is deficient, nor does it argue deficiency of Count VII in its memorandum in support of its motion to dismiss.  This Court ultimately chose not to include Count VII in its discussion because of this confusion and because it seems clear that that claim survives Rule 12(b)(6) scrutiny even if it was meant to be included in the motion.

discrimination in the workplace, (5) that discrimination has occurred toward other employees in the past, and Ms. Councell had be asked to participate in such activities, (6) that no accommodation was made for Ms. Councell's disability and (7) that Ms. Councell was terminated from her employment because of her age, gender, and/or disability. The defendant argues that these facts are insufficient to survive a Rule 12(b)(6) motion to dismiss. It claims that no claim for which relief has been sufficiently alleged because the plaintiffs have not identified the disability from which Ms. Councell suffers, nor have they raised enough facts to give rise to an employment discrimination prima facie case.

In advancing this argument, the defendant has misconstrued the pleading requirements under Federal Rule of Civil Procedure 8(a)(2). Even under the heightened requirements introduced in Twombley and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), a plaintiff is only required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombley, 550 U.S. at 570). This does not require a plaintiff to provide factual evidence of each element of a prima facie case in order to survive a motion to dismiss.

It is true that legal conclusions must be supported by factual allegations to push the legal claims "across the line from conceivable to plausible" in order for a complaint to be

sufficient, but such factual allegations need not prove that the claim will survive summary judgment. Id. The defendant argues that the plaintiffs have failed to sufficiently allege that the Ms. Councell is disabled or that her termination was connected to her alleged disability, her age, or her gender. The Court disagrees.

The plaintiffs argue that Ms. Councell has alleged facts sufficient to show that she is a member of a protected age class and gender class. Further, while she does often make legal conclusions about her status as "disabled," her complaint nonetheless alleges that a physical ailment caused her to miss work, required medical intervention, and caused a drop in her productivity. Whether this physical ailment will qualify as a "disability" after discovery is concluded is another matter, but at the point of pleading, this factual averment is sufficient. Additionally, the plaintiffs argue that Ms. Councell was fired, and create a sufficient plausible connection between that termination and her protected status by stating that: (1) she was qualified for, and had performed sufficiently, the job from which she was terminated, (2) that possible legitimate nondiscriminatory reasons for her termination may be untrue, because HLC's business as a whole was not changed after she was terminated, (3) that her termination itself indicates a lack of accommodation on HLC's part, (4) that her coworker's behavior leading to her termination was evidence that her termination was because of her protected status,

and (5) that she had witnessed discrimination toward other employees in the past and had declined offers to participate in it. In short, the Councells may not discover facts in the future that will allow them to bring this claim before a jury, but they have alleged sufficient facts to maintain the claims in Count I beyond this motion to dismiss.

Count II, a claim for discrimination based upon the plaintiffs' claims to HLC's health insurance plan, has been earlier determined to be a discrimination claim under ERISA § 510. The defendant argues that the plaintiffs have failed to allege any connection between Ms. Councell's termination and her claims to the insurance plan. In response, the plaintiffs maintain that no ERISA claim was asserted, thus they cannot be held to the pleading requirements of ERISA.

While the plaintiffs' argument that no ERISA claim has been made was earlier discharged, regardless of whether this claim was ERISA or state law, the plaintiffs need to allege facts to support a causal connection between Ms. Councell's insurance claims and her dismissal in order to make out a claim. They have failed to do so here. Count II simply alleges that the plaintiffs made claims to the health insurance plan, and "but for" these claims, Ms. Councell would not have been terminated. This "but for" statement is a legal conclusion that the plaintiffs have not alleged facts to support. Therefore, no connection has been sufficiently alleged

between Ms. Councell's termination and her claims to the health insurance program, and the defendant's motion to dismiss is granted as to Count II.

Count III alleges wrongful personnel file documentation in that HLC engaged in "errant documentation of her personnel file" which has "harmed her ability to obtain other employment." HLC argues that this is not a viable cause of action under either West Virginia or federal law. The defendant also argues that West Virginia law does not give a private employee access to her personnel file, let alone a property interest in the same, as is alleged in the plaintiffs' complaint. Finally, the defendant maintains that, even if such a cause of action exists, the plaintiffs have failed to allege any facts in support of it.

The plaintiffs argue that West Virginia does recognize a privacy right in a personnel file and cite <u>Manns v. City of Charleston Police Dep't</u>, 209 W. Va. 620 (W. Va. 2001), in support of this assertion. They reason that a right to privacy in a personnel file logically leads one to the conclusion that other rights over a personnel file also exist. Further, the plaintiffs advance an argument that case law in West Virginia has found that, if personnel evaluation procedure exists, it must be followed before a negative evaluation may be entered into a personnel file and that these findings further lead to a conclusion that a right to an accurate personnel file exists in West Virginia. However,

the plaintiffs fail to take notice of the fact that all of the cases cited that could lead to this "logical conclusion" deal with public employers. This Court does not find this case law informative because HLC is a private employer and thus is not subject to the same regulation as are public employers. Further, the plaintiffs cite to <u>Rand v. Miller</u>, 185 W. Va. 705, to support the argument that employees may sue over an employment evaluation. However, as the defendant points out, <u>Rand</u> was a medical malpractice case where a physician gave a potential employee a pre-employment medical evaluation. The court there held that a defamation action could be "maintained against a physician who makes a false report of a prospective employee's health," but no mention of a right to an accurate personnel file was made, nor was any right to bring a claim against one's employer for failure to accurately keep a personnel file ever discussed. <u>Id.</u> at 709.

This Court fails to make the connection between <u>Rand</u> and an alleged property right to a personnel file. <u>Rand</u> stands for the ability to recover through a well established tort from an actor who communicated false facts about a plaintiff. The plaintiffs here ask the Court to take that information and turn it into a property right under West Virginia law that does not seem to be even tangentially supported by any West Virginia court. The tort of defamation exists to give plaintiffs a cause of action against an actor who communicates false information that injures the

plaintiff.  This is the premise that <u>Rand</u> stands for and this Court does not have the authority to extend this or any other cited holding to create a cause of action for wrongful personnel file documentation.  <u>See</u> <u>Time Warner Entertainment-Advance/Newhouse</u> <u>P'ship v. Carteret-Craven Elec. Membership Corp.</u>, 506 F.3d 304, 315 (4th Cir. 2007) (explaining that federal courts sitting in diversity have no right to expand or create state law).  Accordingly, this Court finds that the cause of action raised in Count III does not exist under West Virginia law and grants the defendant's motion to dismiss Count III.

Count IV is a claim for slander and libel.  The defendant again argues that the plaintiffs have not alleged facts to support this claim.  HLC argues that the complaint fails to allege a single element of the tort of defamation, and that Count IV should be dismissed as a result.  The plaintiffs claim in response that they alleged that factual inaccuracies exist in the personnel file, that the inaccuracies are about Ms. Councell, and that these inaccuracies are the basis of their defamation claims.  They also contend that all untrue statements are unprivileged, "and thus, to whomever they are made, are to a third party."

As an initial matter, the plaintiffs are incorrect in their assertion that all untrue statements are unprivileged.  <u>Parker v.</u> <u>Appalachian Elec. Power Co.</u>, 126 W. Va. 666, 671-72 (1944)("'A privileged communication or statement, in the law of libel or

slander, is one which, except for the occasion on which or the circumstances under which it was made, would be defamatory and actionable.'" (quoting Am. Jur. § 124)). Nonetheless, a failure to recognize that privileges may exist to block this claim is not the basis of dismissal here.

The main deficiency of Count IV is that the plaintiffs fail to identify any statement made by HLC that could be defamatory. The plaintiffs acknowledge this fact in their brief in opposition to the defendant's motion to dismiss and argue that discovery is needed to discern to whom scandalous statements were made. However, even in its brief, the plaintiffs allege nothing more than broad legal conclusions that "inaccuracies" existed in Ms. Councell's personnel file and "scandalous" and "defamatory" statements were made. There is not even an allegation of the subject-matter of these statements. These conclusions are insufficient to support Count IV under the <u>Twombley</u> and <u>Iqbal</u> standards, and are accordingly dismissed.

Count V of the complaint raises a claim of intentional and negligent infliction of emotional distress. This claim too, is insufficiently supported by facts and must be dismissed. Both negligent and intentional infliction of emotional distress claims require that a plaintiff suffer "severe emotional distress" in order to be successful. <u>See</u> <u>Minshall v. Health Care Retirement Corp. of Am.</u>, 208 W. Va. 4, 9 (2000)(setting forth elements of

intentional infliction of emotional distress claim, the fourth element being that "the emotional distress was severe" (quoting Harless v. First Nat'l Bank in Fairmont, 169 W. Va. 673 (1982)), and Marlin v. Bill Rich Constr., 198 W. Va. 635, 652 (1996)("A claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious.")

The plaintiffs have alleged that Ms. Councell has suffered from "annoyance," "inconvenience," and "emotional distress" as a result of her termination, none of which are even legal conclusions sufficient to support a claim for emotional distress, and none of which are supported by any factual averments whatsoever. Intentional infliction of emotional distress also requires that a plaintiff allege "outrageous conduct." Here, aside from alleging a culture of "mean-spirited" discrimination designed to force her to resign, the plaintiffs have failed to make any factual allegations of conduct that could possibly be construed as "outrageous." Additionally, the actual act of terminating an employee for an invidious cause cannot be grounds for "outrageous" conduct under West Virginia law. See Syl. pt. 2, Dzinglski v. Weirton Steel Corp., 191 W. Va. 278 (1994).

As an additional matter, the defendant argues that these claims are barred by the exclusivity provision of the West Virginia Workers' Compensation Act. W. Va. Code § 23-2-6. The Court agrees with HLC to the extent that the claims have been pled in such a way that they fall within the immunity provided by the Workers' Compensation Act. The Workers' Compensation Act creates "sweeping immunity" for employers from all tort negligence actions by employees for injuries, including emotional distress, that occur "in the course of and resulting from employment." Bias v. Eastern Associated Coal Corp., 220 W. Va. 190, 194-96; W. Va. Code § 23-4-1. The plaintiffs argue that the emotional distress claimed in this action was not a result of a workplace incident or accident, but instead was a result of Ms. Councell's termination. While true, the plaintiffs misunderstand the breadth of the West Virginia Workers' Compensation Act in that it provides almost complete immunity from common law tort liability for negligently inflicted injuries to employees as a result of their employment. State ex rel. Frazier v. Hrko, 203 W. Va. 652, 659 (1998)("The employer is entitled to immunity for any injury occurring to an employee and 'shall not be liable to respond in damages at common law or by statute.'" (quoting W. Va. Code § 23-2-6)). Emotional distress which results from termination from employment does, in turn, result of employment.

However, exceptions to employer immunity for injuries to employees under the Workers' Compensation Act, while extremely narrow, do exist. See Bias, 640 S.E.2d at 194. One of these narrow exceptions is "when an employer has deliberately intended to cause injury or death to an employee." Id. While the plaintiffs do plead the broad tort of intentional infliction of emotional distress, such a broad pleading of this intentional tort is insufficient to plead deliberate intention to cause injury. Weirton Health Partners, LLC v. Yates, 2010 U.S. Dist. LEXIS 19951, *16-17 (N.D. W. Va.). In Weirton Health Partners, this Court found that, in order for an intentional infliction of emotional distress claim to fall outside of the immunity provisions of the West Virginia Workers' Compensation Act, the plaintiff must plead facts that suggest "'an actual, specific intent,'" and liability cannot result from "'(A) Conduct which produces a result not specifically intended; (B) conduct that constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct.'" Id. at 17 (quoting W. Va. Code § 23-4-2(d)(2)(I)). The plaintiff Ms. Councell has failed to make allegations of sufficient intent in her claims for emotional distress. Accordingly, the defendant's motion to dismiss is granted as to Count V.

Count VI of the complaint raises a spoliation claim. Spoliation is a stand-alone tort that creates liability when a

party intentionally destroys, materially alters, or fails to retain evidence and the inability to present such evidence then prejudices the plaintiff's ability to make out a legal claim.  <u>Mace v. Ford Motor Co.</u>, 221 W. Va. 198, 202 (2007).  The plaintiffs argue that HLC's alleged actions of "including false and untrue statements in" Ms. Councell's personnel file constitutes spoliation of evidence and has "jeopardized her ability to demonstrate the unlawful discrimination that she has experienced."  HLC claims that spoliation is not a viable cause of action in the context in which the plaintiffs allege it, because spoliation requires that "the destruction or material alteration of evidence" occur at a time when there is "pending or reasonably foreseeable litigation." <u>Silvestri v. General Motors Corp.</u>, 271 F.3d 583, 590 (4th Cir. 2001).  However, while it is true that, as HLC points out, any material alteration of Ms. Councell's personnel filed occurred during her employment and at a time before Ms. Councell's cause of action arisen, West Virginia courts construe "potential litigation" more broadly than the defendant would have the Court construe it today.  In <u>Mace</u>, the West Virginia Supreme Court of Appeals endorses the <u>Black's Law Dictionary</u> definition of "pending" and takes the term to mean

> Existing in possibility but not in act.  Naturally and
> probably expected to come into existence at some future
> time, though not now existing.

221 W. Va. at 202 (quoting <u>Black's Law Dictionary</u> at 1052 (5th ed. 1979)).  If plaintiffs' factual allegations are to be believed, and they must for purposes of determination of a Rule 12(b)(6) motion, and HLC employees and supervisors terminated her for the invidious purposes that she alleges, and were engaging in a practice of "documenting the file" and "build[ing] the record" in order to create what appeared to be a legitimate personnel record of the circumstances leading to her termination, then a reasonable foreseeability of litigation can be charged against the defendant at this stage.  Accordingly, the defendant's motion to dismiss Count VI is denied.

Finally, the defendant argues that the Mr. Councell's loss of consortium claim should be dismissed as well because it has been insufficiently pled in the complaint.  As the defendant acknowledges, loss of consortium claims in West Virginia are "derivative of the underlying tort claim with which is brought" and recovery often depends upon the success of the underlying tort claim.  It is also true, as the defendant points out, that loss of consortium claims are distinct in that they vindicate a right to consortium within a marriage that is a right separate and distinct from any right of the tortuously injured spouse that may have been violated by a tortfeasor.  <u>Dupont v. United States</u>, 980 F. Supp. 192, 195-96 (S.D. W. Va. 1997).  However, in raising a loss of consortium claim, the only separate allegations that must be made

to survive a motion to dismiss are that the plaintiffs suffered a loss of consortium, and that the loss of consortium was caused by the tortuous activity of the tortfeasor which impaired the plaintiff's spouse. Here, the plaintiffs have alleged that Ms. Councell has been impaired, and that Mr. Councell has suffered a loss of her companionship as a result. These are sufficient allegations to support this claim. Accordingly, the defendant's motion to dismiss the plaintiffs' loss of consortium claim is denied.

C.    Motion to Amend the Complaint

In their memorandum in opposition to the defendant's motion to dismiss, plaintiffs included an alternative motion to amend the complaint should it be deemed deficient. The defendant argues that this motion should be denied because the plaintiffs could have pursued this route wholesale rather than opposing the motion to dismiss and offering a motion for leave to amend in the alternative. However, choosing to first contest a motion to dismiss rather than immediately requesting leave to amend is not a reason to deny such a request. Likewise, the deficiency of the original complaint and the defendant's belief that amendment is unlikely to produce sufficiently pled claims is also not a reason to deny a request for leave to amend.

It is well established that, when a party requests leave to amend its Complaint under Federal Rule of Civil Procedure 15(a),

"leave shall be freely given when justice so requires."  Motions should be granted "in the absence of a 'declared reason' 'such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., futility of amendment, etc.'" Ward Electronics Service, Inc. v. First Commercial Bank, 819 F.2d 496 (4th Cir. 1987)(quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  This is the plaintiffs' first motion to amend their complaint, there is no evidence that it is offered in bad faith, and while, as outlined above, many of the claims raised in the original complaint are deficient, there is nothing apparent to the Court that would suggest that amendment is wholly futile. Additionally, the case has not progressed far enough to consider granting a motion to amend as an undue delay.  Therefore the plaintiffs' motion for leave to amend their complaint is granted.

However, the defendant has nonetheless expended nearly seven months on this case, has filed multiple motions, and has engaged in significant discovery with the plaintiffs based upon the allegations raised in the original complaint.  Accordingly, in order to avoid undue prejudice against the defendant, the plaintiffs are directed to frame the amended complaint as a more definite statement.  No new causes of action or theories of relief may be raised in this particular amended complaint that were not alleged in the original complaint, and the plaintiffs are directed

to consider the deficiencies that have been found in the original complaint and whether such deficiencies can be remedied through amendment before deciding to continue to raise all claims alleged in the original complaint.

D.    Motion to Strike

Due to the fact that the plaintiffs have been given leave to file an amended complaint, the defendant's motion to strike elements of the original complaint as redundant, scandalous, immaterial, and/or impertinent pursuant to Rule 12(f) is denied as moot. The plaintiffs are directed to take care in the preparation of an amended complaint to avoid tangential commentary and are directed to plead only issues germane to the resolution of this litigation.

## V.  Conclusion

For the reasons stated above, the plaintiffs' motion to remand is DENIED. The defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED as to the Counts II, III, IV, and V and DENIED as to Counts I, VI, and the plaintiffs' loss of consortium claim.[5] Further, the plaintiffs' motion for leave to file an amended complaint is GRANTED as framed. The plaintiffs' amended complaint shall take the form of a more definite statement in that it shall raise no new theories of

---

[5]Count VII is likewise not dismissed; see discussion regarding the Court's inability to discern whether Count VII was made a part of the motion to dismiss, supra.

liability or claims for relief, and shall be used only to correct deficiencies in the original complaint. The plaintiffs shall file their amended complaint as permitted above on or before **October 21, 2011**. Accordingly, the defendant's motion to strike is DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    October 11, 2011


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE