IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL L. COUNCELL and CHARLES E. COUNCELL,

     Plaintiffs,

v.                          Civil Action No. 5:11CV45
                                     (STAMP)

THE HOMER LAUGHLIN CHINA COMPANY,
aka HLC, aka HOMER LAUGHLIN,
aka FIESTAWARE, aka HOMER LAUGHLIN CHINA,
aka NEWELL BRIDGE AND RAILWAY CO.,

     Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO AMEND,
DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' FIRST AMENDED COMPLAINT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND AMENDED MOTION FOR SUMMARY JUDGMENT,
DENYING AS MOOT MOTIONS IN LIMINE,
MOTION TO STRIKE MOTION IN LIMINE, AND MOTION
FOR LEAVE TO FILE ADDITIONAL MOTION IN LIMINE
AND DENYING AS MOOT PLAINTIFFS'
REQUEST FOR JURY QUESTIONNAIRE**


I.  Procedural History

The husband and wife plaintiffs filed this civil action in the Circuit Court of Hancock County, West Virginia. Mrs. Councell seeks compensatory and punitive damages, and attorney's fees and costs from the defendant, Homer Laughlin China Company (hereinafter "HLC"), her former employer, as a result of her termination. Mr, Councell seeks damages for loss of consortium derivative of Mrs. Councell's claims.

The defendant then removed the action to this Court on the basis of both federal question and diversity jurisdiction. This Court denied plaintiffs' subsequent motion to remand finding both that a claim by Mrs. Councell for insurance discrimination was completely preempted by the Employee Retirement Income Security Act ("ERISA"), specifically § 510 of the Act, 29 U.S.C. § 1140, and that removal based upon diversity jurisdiction was also sufficient. In the same memorandum opinion and order, this Court granted in part and denied in part the defendant's motion to dismiss. This Court also granted the plaintiffs leave to amend their complaint, but only to cure the deficiencies in their original complaint, and directed the plaintiffs to file their amended complaint in the form of a more definite statement on or before October 21, 2011.

On October 24, 2011, the plaintiffs filed an untimely amended complaint, which also included new claims, in contravention of this Court's order requiring the plaintiffs' amended complaint to take the form of a more definite statement and to not include any "new theories of liability or claims for relief." The plaintiffs also filed a motion which requested leave to amend to add the new claims which they had already included in their untimely filed amended complaint. The new claims that the plaintiffs seek to add are a claim of retaliatory discharge and a claim of detrimental reliance/breach of employment agreement. The plaintiffs argue that these claims were only discovered during the course of discovery,

and thus were unknown to plaintiffs' counsel at the time that the original complaint was filed.

The defendant filed a response in opposition, arguing that the plaintiffs' request violated a court order, and that granting leave to amend was not appropriate. The defendant further argued that the plaintiffs' amended complaint was untimely, and asked this Court to impose sanctions and enjoin a state court action brought by the plaintiffs alleging the claims sought to be added by amended complaint. The plaintiffs replied, offering response to the defendant's arguments and requesting an enlargement of time to file their amended complaint, admitting that, as a result of an oversight on the part of their counsel, it was filed three days after the deadline set by this Court.

Following the full briefing of these motions, the defendant also filed a motion for summary judgment, arguing that no issue of material fact has been raised by the plaintiffs with regard to any of the claims in either of their complaints, and that, as a result, summary judgment should be granted in its favor. The plaintiffs responded in opposition to this motion, and the defendant filed a timely reply.

These motions are now fully briefed and are ripe for disposition by this Court. For the reasons stated below, the plaintiffs' motion to file an amended complaint will be denied. However, the plaintiffs' motion for enlargement of time to file the

amended complaint previously allowed by this Court will be granted. The new claims added to the plaintiffs' amended complaint will be stricken, the defendant's motion to enjoin the plaintiffs' state court action will be denied, as will its motion for sanctions. Finally, the defendant's motion for summary judgment will be granted, and this case will be dismissed.[1]

## II. Facts

The wife plaintiff in this case, Carol Councell, was employed by HLC for approximately 15 years when she was terminated on November 2, 2010 at the age of 58. In 1995 or 1996, Mrs. Councell underwent a "bladder tuck" procedure as a result of a bladder suspension problem, which she claims is aggravated by heavy lifting. Mrs. Councell also allegedly suffers from a heart valve problem, asthma, and other "female anatomy problems" which eventually necessitated a hysterectomy and other medical procedures in December 2008 after which Mrs. Councell took medical leave for six weeks and for which she made claims to HLC's self-insured health plan.

Mrs. Councell contends that, due to her age, gender, and her alleged disability, as well as because she was making claims to the

---

[1]Despite the fact that this Court previously informed the parties of its intent to grant summary judgment for the defendant, and in direct contravention of this Court's direction to file no further motions with respect to that ruling, the plaintiffs have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2). This motion is denied by separate memorandum opinion and order.

company health insurance plan, HLC, through its managers and personnel, began to make false notations in her file in order to "build the record" to terminate her. Mrs. Councell also argues that, despite this negative performance documentation in her file, her productivity had not decreased. Finally, Mrs. Councell argues that, in order to attempt to force her to resign from her position, HLC created a "culture of mean-spirited, age based, gender based, and disability based discrimination." Mrs. Councell says that she was eventually terminated due to these discriminatory motivations, and that in addition to monetary damages and pain and suffering on Mrs. Councell's part as a result of her termination, Mr. Councell also suffered injury in the form of loss of her spousal consortium.

## III. <u>Applicable Law</u>

### A. <u>Motion to Amend</u>

Federal Rule of Civil Procedure 15(a)(1)(A) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ward Elec. Serv. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987); Gladhill v. Gen. Motors Corp., 743 F.2d 1049, 1052 (4th Cir. 1984).

B.   Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme

Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502

U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

### A. Motion to Amend

This Court's memorandum opinion and order denying the plaintiffs' motion to remand and granting in part and denying in part, the defendant's motion to dismiss (ECF No. 35.) unambiguously delineated two specific requirements with regard to the leave that this Court granted to the plaintiffs to file an amended complaint. First, this Court mandated that, because leave was granted for the purpose of curing the deficiencies of the plaintiffs' complaint alone, "[n]o new causes of action or theories of relief may be raised in this particular amended complaint that were not alleged in the original complaint."

Secondly, this Court directed the plaintiffs to file an amended complaint that complied with the above mandate "on or before **October 21, 2011**." (emphasis in original). However, on October 24, 2011, the plaintiffs filed an amended complaint that was not only untimely pursuant to the above-described order, but which also, in direct contravention of this Court's order, added

8

two new causes of action: retaliatory discharge and detrimental reliance/breach of employment contract.[2]

Federal Rule of Civil Procedure 6(b)(1)(B) allows this Court to excuse the plaintiffs' failure to timely file their amended complaint on motion when it is determined that "the party failed to act because of excusable neglect." Plaintiffs say the untimeliness of the amended complaint is the result of a clerical error on the part of their counsel, and that this constitutes excusable neglect. This Court seriously questions whether this explanation is excusable in this case. However, without deciding whether or not plaintiffs' counsel has demonstrated excusable neglect, for purposes of deciding this case on its merits only, this Court will allow the first amended complaint to be filed notwithstanding its untimeliness.

However, the only offering of explanation for why the amended complaint ignores this Court's order that no new claims be added is that a motion to amend was filed contemporaneous to the amended complaint and that plaintiffs' counsel believed that it would "expedite matters" to "includ[e] all claims in one amended pleading." Nonetheless, the plaintiffs' filed amended complaint goes outside the scope of the leave granted by this Court in its

---

[2]Defendant argues that the plaintiffs have also added a claim for defamation, but because the original complaint contained a claim for slander and libel, this Court construes the plaintiffs' defamation claim as a more definite statement of the slander and libel claim in the original complaint.

memorandum opinion and order on October 11, 2011, and thus, at least with regard to the new claims added, was filed without leave of court in contravention of Federal Rule of Civil Procedure 15(a)(2).

Consequently, this Court must strike the plaintiffs' claims for retaliatory discharge and detrimental reliance/breach of employment contract from the first amended complaint (ECF No. 46). See Peterson v. Airline Pilots Ass'n, 759 F.2d 1161, 1163 (4th Cir. 1985) (noting without objection the district court's dismissal of the plaintiff's second amended complaint because it "went beyond the scope of the district court's order.").

Further, due to undue delay and the prejudice to the defendant which would result from granting leave to amend, the plaintiffs' motion for leave to amend must also be denied. The plaintiffs argue in support of this motion that they were unaware of the existence of these claims until they conducted the deposition of Mrs. Councell's direct supervisor, Pat Shreve, who stated that she told Mrs. Councell to "get [her] shit and get out" immediately following an exchange wherein Mrs. Councell had "complain[ed] to her that a subordinate female employee was being harassed by a male employee," and until they conducted the deposition another of Mrs. Councell's superiors, who testified that he had promised that no changes would be made to Mrs. Councell's employment when she returned from medical leave. (ECF No. 45 *2.) (emphasis in

original).  Both of these depositions were conducted in October 2011.  Id.

The May 9, 2011 scheduling order in this case, which was derived from the parties' own Federal Rule of Civil Procedure 26(f) planning meeting report, delineated that any amendments to pleadings were to be made on or before July 22, 2011.[3]  The plaintiffs' motion to amend was filed on October 24, 2011 -- more than three months after this deadline.  When a motion to amend a pleading is filed after a scheduling order's deadline for such motions, "a moving party first must satisfy the good cause standard of Rule 16(b).  If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)."  Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D. W. Va. 1995); see Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment . . . . [T]he focus of the inquiry is upon the moving party's reasons for seeking modification."  Marcum, 163 F.R.D. at 254 (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

---

[3]It is noted that the parties suggested and had agreed upon a June 30, 2011 deadline for amended pleadings.  (ECF No. 9 *3.) Thus, this Court extended this deadline.

The defendant argues that the plaintiffs have not shown good cause because the nature of the claims is such that the plaintiffs could not have been unaware of their existence at the time that the complaint was filed. This Court agrees. The retaliatory discharge claim apparently derives from an exchange between Mrs. Councell and her supervisor which eventually led to Mrs. Councell's termination. Mrs. Councell testified about this incident in her deposition, and it is clear to this Court that the incident was quite confrontational, and that, based upon Mrs. Councell's testimony of her memory of it, the effect that it had upon her and its relatedness to her termination, was one that would have been communicated to her counsel in initial meetings. Further, the nature of the situation as it was described by Mrs. Councell in her deposition would have placed her counsel on notice of a possible retaliation claim at the time of the initial filing of the complaint. Counsel for plaintiffs argues that his clients are not sophisticated in employment law, and thus would not have known of the possible significance of this incident. However, it is clear for the aforementioned reasons that the incident would have been communicated to counsel, and that counsel should have recognized its possible significance at that time.

As for the detrimental reliance/breach of employment agreement claim, this Court is similarly convinced that the plaintiffs were on notice of this possible claim at the time of the filing of the

original complaint. Mrs. Councell was a party to the email exchange upon which this claim is based, and this Court must conclude that she was in possession of the emails at the time that the complaint was filed. Thus, if plaintiffs' counsel was unaware of this exchange at the time of filing, it is only as a result of counsel's own failure to obtain all necessary employment-related documents from his clients, and not due to a lack of access to necessary information prior to discovery. In addition, this Court finds it necessary to note that the plaintiffs argue that they were unaware of this claim until the time that Mr. Brinkman was deposed. However, the deposition transcript makes it clear that the plaintiffs were in possession of the emails before the deposition, because they were presented to Mr. Brinkman by plaintiffs' counsel at his deposition. (ECF No. 63 Ex. D *141-42.)

Finally, in addition to the plaintiffs' failure to demonstrate cause for the delay in filing this motion to amend, this Court finds, as it did at the time that it initially granted leave to file an amended complaint to be construed as a more definite statement, that the bringing of additional claims at the close of pretrial litigation would prejudice the defendant. The plaintiffs argue that the defendant has not engaged in much discovery in this case, and that the claims sought do not largely change the landscape of the plaintiffs' case. However, it is clear from the docket that discovery has taken place over the course of many

months, and that none of this discovery would have focused on a basis for a retaliation claim or for a breach of employment agreement claim. Both of these new claims would require significant amounts of information that would not have been sought in discovery based upon the initial complaint.

Further, the deadline for fact discovery in this case, which has already been extended by over a month from the original deadline, was the same day that the plaintiffs filed this motion for leave to file an amended complaint, and summary judgment motions were due in one week following the filing of this motion. Aside from the obvious prejudice that these deadlines would cause for the defendant should this Court permit the plaintiffs to add these new claims at this time,[4] such permission would unnecessarily delay this litigation. This Court, through its discretion in controlling the expeditious resolution of litigation before it, declines to further delay this case due to the plaintiffs' untimely desire to add claims of which they should have been aware long before leave was finally sought. See Link v. Wabash R. Co., 370 U.S. 626, 630 (1962).

---

[4]It is noted that the plaintiffs also opposed extension of these deadlines had this Court granted leave to amend.

B. <u>Motion for Summary Judgment</u>

As a result of the foregoing, five separate claims[5] asserted by Mrs. Councell, as well as a derivative claim for loss of consortium by Mr. Councell, remain before this Court and all are subject to the defendant's motion for summary judgment. The Court will analyze each of the counts in the order in which they were raised by the plaintiffs in their complaint.

1. <u>Unlawful Discrimination Claims</u>

Counts I and VII are claims for unlawful discrimination based upon Mrs. Councell's gender, age, and disability. Under the WVHRA, the burden of sustaining this claim follows the burden shifting framework of Title VII of the Civil Rights Act of 1964, established by <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>Ford Motor Credit Co. v. W. Va. Human Rights Comm'n</u>, 225 W. Va. 766, 776 (2010). Thus, initially, Mrs. Councell has the burden of establishing a prima facie case of discrimination. A prima facie case under the WVHRA requires a showing of the following: "(1) That

_____

[5]Mrs. Councell raises two counts of unlawful discrimination -- Count I simply alleges unlawful discrimination and Count VII alleges violation of the West Virginia Human Rights Act ("WVHRA"). However, the WVHRA, when invoked, represents the exclusive remedy under West Virginia law for the unlawful discrimination which it proscribes, thus precluding any common law cause of action for employment discrimination in this case. W. Va. Code § 5-11-13(a); <u>see also</u> <u>Guevara v. K-Mart Corp.</u>, 629 F. Supp. 1189 (S.D. W. Va. 1986). Further, the plaintiffs vehemently deny that they have raised any claims under federal law. Thus, this Court concludes, as it must, that these two counts are actually a single claim for employment discrimination under the WVHRA.

the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Id. (internal citations omitted). While this burden is not an "onerous" one, it must be satisfied initially in order for a discrimination case to move forward. Id. at 777.

When a prima facie case is established, an inference of discriminatory conduct arises and the burden shifts to the defendant to produce a "legitimate non-discriminatory reason" for the adverse employment decision. Id. (quoting Syl. pt. 2, West Va. Inst. of Tech. v. West Va. Human Rights Comm'n, 181 W. Va. 525 (1989)). This legitimate non-discriminatory reason ("LNDR") is not required to be fair or honorable or even reasonable, so long as it is not discriminatory. Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993). Further, the defendant is only held to a burden of production at this stage, and when satisfied, any inference of discrimination created by the plaintiff's prima facie case drops away. Should the defendant produce a LNDR, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered LNDR is pretext, and that discrimination is the actual reason for the adverse employment action. Ford Motor Credit, 225 W. Va. at 777.

a.  <u>Discrimination Based Upon Gender and Age</u>

Initially, Mrs. Councell contends that she was terminated from her employment with HLC due to her age and gender.  Gender is a protected class under WVHRA and it is not disputed that Mrs. Councell was 58 when she was terminated, and thus, within a protected age class.[6]  Therefore, the first prong of Mrs. Councell's prima facie case is easily established.  It is also undisputed that Mrs. Councell was terminated by HLC, thus the second prong of the prima facie case is likewise easily found here.  However, this Court does not believe that the Mrs. Councell is able to create a genuine issue of material fact with regard to any causal connection between her termination and her age and/or her status as a female.  Mrs. Councell seems to make two arguments to support her prima facie case of gender and/or age discrimination.

First, she argues that while she was on medical leave following a medical procedure on or about December 3, 2008, her work duties were assumed by Shane Timmons, a male employee in his thirties and that, after she returned from leave, Mr. Timmons was given preferential treatment in workplace disputes.  Mrs. Councell argues that "Pat Shreve was influencing the work conditions such that Mr. Timmon's [sic] would be the permanent replacement of Mrs. Councell and that Mr. Timmon's [sic] was hopeful he would take that

---

[6]Under the WVHRA, "age" means anyone "the age of forty or above."  W. Va. Code § 5-11-3(k).

17

position." (ECF No. 63 *16.) However, there is no evidence provided to support this contention or that this younger male employee replaced Mrs. Councell when she was terminated. In fact, HLC contends, and this contention is not factually challenged, that Pat Shreve, Mrs. Councell's female supervisor who is also older than Mrs. Councell, absorbed Mrs. Councell's responsibilities herself following Mrs. Councell's termination. Mrs. Councell further provides no evidence that any other female or older employee was treated less favorably than male employees and/or younger employees, nor does she present any evidence of any male employee or younger employee other than Shane Timmons who may have received preferential treatment.

This Court does not find the fact that a younger male took over Mrs. Councell's responsibilities while she was on leave to be probative of gender or age discrimination. When Mrs. Councell was on leave, someone needed to take over her responsibilities, and just because that person happened to be a younger male cannot serve as evidence of discrimination -- especially when Mrs. Councell resumed her managerial position upon her return, and there is no evidence that Mr. Timmons took over Mrs. Councell's position full-time after her termination.

Further, while Mrs. Councell alleges that Mr. Timmons received "preferential treatment" in workplace disputes following Mrs. Councell's return, the only evidence they offer to support this

claim is that Mr. Timmons was involved in workplace disputes following Mrs. Councell's return which resulted unfavorably for Mrs. Councell. This is also not evidence that Mrs. Councell was terminated because she is an older female. There is no evidence that either of the workplace disputes which Mrs. Councell identifies as evidence of preferential treatment were contrived, nor did either involve only Mr. Timmons. While hindsight may have allowed Pat Shreve to conclude that at least one of the incidents should not have been handled the way that it was, this conclusion does not serve to paint the way in which it was originally handled as discriminatory based upon Mrs. Councell's age or gender, without something to connect the incident to Mrs. Councell's age and/or gender status.[7] <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 217 (4th Cir. 2007) (focus must be placed upon the point of view of

---

[7]It is noted that this incident was only tangentially related to Mr. Timmons in that Mrs. Councell was deemed to have been rude to his family when they were in the store.

Further, this Court recognizes that Ms. Shreve admitted at her deposition that Mr. Timmons should have informed Mrs. Councell that his family was in the store and that he was disrespectful to Mrs. Councell concerning the incident, but was not disciplined for this. However, the incident for which Mrs. Councell was disciplined was directly regarding her allegedly inappropriate treatment of customers. The nature of the alleged behavior of Mrs. Councell which led to discipline, and the nature of the alleged behavior of Mr. Timmons, which did not lead to discipline in this instance, is too different to use as evidence of preferential treatment of Mr. Timmons. <u>See</u> <u>Young v. Bellofram Corp.</u>, 705 S.E.2d 560, 568 (W. Va. 2010) (when conduct of two employees is not comparable, court cannot compare level of discipline for purposes of plaintiff's prima facie case).

the decisionmaker and whether he believed his reason to be credible at the time that the employment action was made).

Secondly, Mrs. Councell argues that her medical condition is one which would not occur if she were not an older female, because her condition is a progressive one dealing with her "female anatomy." (ECF No. 63 *16.) Thus, Mrs. Councell argues, termination due to her disability is also a result of her status as an older female. For the reasons stated below, this Court finds that Mrs. Councell was not terminated due to any disability that she may have had. Notwithstanding this conclusion, this argument is not probative of gender or age discrimination. There is no evidence presented that any discrimination that Mrs. Councell may have suffered as a result of her alleged disabilities was because these disabilities were so-called "older female disabilities" or that she would have been treated differently were they back problems for example, or any other problem which could also cause a young male employee to have lifting restrictions. Nor is there any evidence that any limitations which may have resulted from her alleged disabilities were of the type that would only afflict an older female. Accordingly, this contention by Mrs. Councell has no merit.

This Court also notes that, in opposition to the conclusory and speculative arguments offered by Mrs. Councell to support her gender and age discrimination claims, a wealth of uncontested

rebuttal evidence exists to undermine them. All of Mrs. Councell's superiors who were involved in her termination are in the protected age class of the WVHRA, and Pat Shreve, Mrs. Councell's direct supervisor, was actually older than Mrs. Councell. Mr. Wells, who accepted the recommendation to terminate Mrs. Councell and gave final approval of her termination, was 69 years old when Mrs. Councell was terminated. Also, Mrs. Councell was hired as a woman in her forties, and twice promoted by Pat Shreve herself when she was a woman in her forties. See Young v. Bellofram Corp., 705 S.E.2d 560, 567 (W. Va. 2010) ("A promotion at the age of fifty-nine does not support [the plaintiff's] claim that she was discriminated against on the basis of her age [when she was terminated at the age of sixty]."). The uncontradicted affidavit of Ken McElhaney, the Vice President of Operations for HLC, reveals that the average age of the twelve employees at the outlet store where Mrs. Councell was employed is fifty years, and that the oldest employee currently employed at the outlet is seventy-six years old. (ECF No. 61 Ex. A.) The statements in Mr. McElhaney's affidavit also reveal that a fifty-five year old female is currently employed at the outlet and that, of the twelve employees, ten are female. Id.

As a final matter, at her deposition, when directly asked by defense counsel whether she believed that she had been terminated based upon her sex, Mrs. Councell responded in the negative. Mrs.

Councell attempts to remedy this admission by submitting an affidavit along with the plaintiffs' response to the defendant's motion for summary judgment, in which she avers that she does in fact believe that she was terminated because of her gender.[8] This attempt is unsuccessful in convincing this Court to disregard the fact that Mrs. Councell herself has admitted that her gender discrimination claim has no merit. It is settled law that a party's affidavit which directly contradicts her earlier deposition testimony must be rejected by the court in determining a motion for summary judgment, barring circumstances which would lead the court to determine that the contradiction is a result of confusion or a lack of clarification within the deposition testimony. <u>Rorhbrough v. Wyeth Lab. Inc.</u>, 719 F. Supp. 470, 474 (N.D. W. Va. 1989); <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946 (4th Cir. 1984); <u>Hinkle v. The City of Clarksburg</u>, 81 F.3d 416 (4th Cir. 1995).

Mrs. Councell argues that her deposition was never concluded, and plaintiffs' counsel did not have an opportunity to redirect his client. However, this Court finds that the question asked of Mrs.

---

[8]It is also noted that when Mrs. Councell was asked whether she had ever heard Ms. Shreve say anything about anyone which would lead Mrs. Councell to believe that Ms. Shreve discriminated based upon age or gender, she answered that she was not aware of any such statements. However, in the plaintiffs' brief in response to the defendant's motion for summary judgment, the plaintiffs conclusively state that Ms. Shreve "made derisive comments about older workers and their ability to perform their job." (ECF No. 63 *2.) This statement is not supported by any facts, and is in direct contravention of the testimony given by Mrs. Councell at her deposition.

Councell at her deposition which prompted her admission that she did not believe that she was terminated due to her gender was direct and clear, and her answer was not the result of confusion. Further, much like the United States Court of Appeals for the Fourth Circuit found in Barwick, this Court believes that Mrs. Councell would have been aware of the importance of her answer to this aspect of her case at the time of her deposition, regardless of her level of legal sophistication. See id. at 959. Finally, also as in Barwick, Mrs. Councell's affidavit is conclusory as to her assertion that she was terminated because of her gender, and "does not set forth facts of which the plaintiff has personal knowledge and it does not give specific facts" which may explain her contradictory response at her deposition. Id. Thus, this Court cannot find that the plaintiffs' counsel's inability to redirect his client at her deposition creates sufficient reason to consider Mrs. Councell's assertion in her affidavit that she was terminated due to her gender, a statement which directly contradicts her deposition testimony. As a result, this Court finds that Mrs. Councell has not created an issue of material fact with regard to any causal connection between Mrs. Councell's termination and her age and/or gender, and summary judgment is granted to the defendant. See Johnson v. Killmer, 219 W. Va. 320, 324 (2006) (a plaintiff must "show some evidence which would sufficiently link the employer's decision and the plaintiff's

status as a member of the protected class so to give rise to an inference that the employment decision was based upon discriminatory criterion") (internal quotations omitted).

    b.  Discrimination Based Upon Disability

Under this claim, Mrs. Councell's status as a protected person is also in question along with the causal nexus element of her claim.  Mrs. Councell asserts that she qualifies as "disabled" under the meaning of that term in the WVHRA because she underwent surgery on or about December 3, 2008 in order to repair prior issues that she had with regard to a prolapsed bladder.  Mrs. Councell claims that these issues and the surgery resulted in lifting limitations.  Specifically, Mrs. Councell testified that she was unable to do heavy lifting as a result of the bladder problem which led to the surgery, and that her lifting restrictions continued following the surgery and continue even today.

Under the WVHRA, a person who suffers from a disability is:

> a person who has one or more physical or mental impairments that substantially limits one or more major life activities; a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, but that is treated by others as being such a limitation; a person who has one or more physical or mental impairments that substantially limits major life activities only as a result of attitudes of others toward such impairment; and a person who has no such impairments, but who is treated by others as having such impairment.

Stone v. St. Joseph's Hosp. of Parkersburg, 208 W. Va. 91, 102 (2000).

In order for an impairment to "substantially limit" an activity, it must significantly restrict "the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition manner or duration under which the average person in the general population can perform that same activity." 77 C.S.R. § 2.5. The defendant maintains that Mrs. Councell does not have a disability under this definition because, in the plaintiffs' amended complaint, it is alleged that Mrs. Councell "was physically strong and capable of performing the tasks associated with retailing heavy pottery." (ECF No. 46 *3-4.) Further, during Mrs. Councell's deposition, she admitted that she was able to cook, clean, take care of her personal hygiene and care for her husband, and that, beyond avoiding heavy lifting of things like furniture, her limitations do not affect her daily life.[9]

After review of the record and the contentions of the parties, it appears that the only real limitation suffered by Mrs. Councell that seems to be supported by evidence is that the amount of heavy

---

[9]Mrs. Councell's affidavit tells another story about the effect that her bladder protrusion and related ailments had on her daily life. However, for the reasons explained above with regard to affidavit statements which contradict deposition testimony, this Court will not consider these averments by Mrs. Councell. This Court believes that Mrs. Councell was directly asked to explain the way(s) in which her medical condition(s) affected her daily life and she was not rushed or prevented from answering fully. Further, this Court believes that Mrs. Councell would have been aware of the importance of her answer given the fact that she was claiming disability discrimination.

lifting in which she could safely engage was limited.[10]  Under the
Americans with Disabilities Act, which defines "disability" with
language nearly identical to the definition in the WVHRA,[11] lifting
has been determined to be a major life activity, and limitations in
ordinary lifting have been determined to qualify as significant
limitations to it.  See Lowe v. Angelo's Italian Foods, 87 F.3d
1170 (10th Cir. 1996).

However, it seems clear to this Court that there is no
evidence to suggest that Mrs. Councell was substantially limited in
her regular, ordinary lifting ability, but only in the lifting of
very heavy objects.[12]  Such a limitation is likely outside the realm
of a significant limitation on the major life activity of lifting
as a matter of law.  See Williams v. Channel Master Satellite Sys.,
Inc., 101 F.3d 346, 349 (4th Cir. 1996) ("as a matter of law[] a
twenty-five pound lifting limitation -- particularly when compared
to an average person's abilities -- does not constitute a

---

[10]The plaintiffs' briefs, as well as deposition testimony,
suggest that Mrs. Councell may also suffer from a heart condition
and asthma, but this Court cannot find any evidence or even
allegations that these conditions limit Mrs. Councell's ability to
engage in any activities.

[11]The ADA defines "disability" as: "(A) a physical or mental
impairment that substantially limits one or more major life
activities of such individual; (B) a record of such impairment; or
(C) being regarded as having such impairment."  42 U.S.C.
§ 12102(1).

[12]Mrs. Councell's deposition testimony reveals that she is only
limited in her ability to do things like move and lift furniture.
(ECF No. 61 Ex. C *163-64.)

significant restriction on one's ability to lift, work or perform any major life activity."); <u>Ray v. Glidden Co.</u>, 85 F.3d 227, 229 (5th Cir. 1996) (ten-pound lifting restriction not a disability).

Further, Mrs. Councell's own deposition testimony denies that any major life activities are substantially limited by her ailment(s). Beyond a showing of limitation, it is crucial that a plaintiff present evidence that the limitation had an actual effect on one or more of her major life activities in order to qualify as "disabled" under the law. <u>Lyons v. Shinseki</u>, 2011 U.S. App. LEXIS 23077, No. 11-1361 (4th Cir. Nov. 17, 2011)(unpublished) ("Standing alone, an impairment is not sufficient to establish a disability; the employee also must prove the impairment substantially limits a major life activity."). Mrs. Councell has failed to make such a showing here.

Mrs. Councell also contends that even if it cannot be proven that she actually had a disability, she had a "perceived difficulty lifting," and thus qualifies as disabled under the statute. <u>See Stone v. St. Joseph's Hosp.</u>, 208 W. Va. at 101-102. However, Mrs. Councell offers no factual contention to support why she believes that she was perceived as having a disability. Deposition testimony reveals that Ms. Shreve was aware that Mrs. Councell was supposed to avoid lifting overly heavy loads, but it also reveals that she did not believe that heavy lifting was a necessary part of Mrs. Councell's position as an assistant manager. <u>See</u> ECF No. 63

Ex. C *85; and ECF No. 61 Ex. D *90-91.  Further, testimony of Mrs.

Councell's other superiors reveals that they were wholly unaware of

any possible lifting restrictions that Mrs. Councell may have had.[13]

(ECF No. 61 Ex. E *42-43, Ex. H *119, Ex. I *40-41.)  There is no

evidence that anyone told Mrs. Councell that she was not allowed to

perform any activities on the job, nor does it appear that she was

treated as if she was unable to perform the necessary functions of

her job.  In fact, it appears that Ms. Shreve simply cautioned Mrs.

Councell against doing anything that may cause her to injure

herself.[14]  (ECF No. 63 Ex. D *90-91.)  It is not reasonable to deem

such an instruction regarding safety precautions to be evidence

that Ms. Shreve viewed Mrs. Councell as substantially limited in

major life activities.

Mrs. Councell seems to attempt to use Stone as evidence that

simply showing that she was "perceived [as having] difficulty

lifting" satisfies their burden of proof of showing that Mrs.

Councell's superiors viewed her as disabled.  However, the facts of

Stone make it readily distinguishable from the instant situation.

The plaintiff in that case was reassigned from his emergency

---

[13]This testimony has not been challenged by Mrs. Councell.

[14]Mrs. Councell argues that Ms. Shreve "placed limitations on
[Mrs. Councell] without submitting a request for an independent
medical examination."  This argument overstates Ms. Shreve's
testimony, in which she said that she merely "cautioned [Mrs.
Councell] against [lifting, because] [s]he had complained about her
bladder and I just made the comment that maybe she shouldn't be
lifting."  (ECF No. 63 *85.)

medical services job to a desk position because his employers believed that his back problems and "perceived difficulty lifting" limited his ability to perform the essential functions of his job. See W. Va. Code § 5-11-3(m)(1) (substantial limitation of the ability to work specifically included as a "major life activit[y]"). Here, there is no evidence that Ms. Shreve or any other of Mrs. Councell's superiors had any such opinion of Mrs. Councell's perceived difficulty with lifting heavy objects or that they had the opinion that it limited her in any other major life activity. Thus, Mrs. Councell has not shown that she is a disabled person under the WVHRA.

Even if this Court could find that there exists a genuine issue of material fact with regard to whether or not Mrs. Councell qualifies as a disabled individual under the WVHRA, the defendant is still entitled to summary judgment on this claim because the Mrs. Councell has not satisfied her prima facie burden of showing a causal connection between Mrs. Councell's alleged disability and her termination. First, Mrs. Councell attempts to create an issue of material fact as to the causal nexus by arguing the proximity in time between when Mrs. Councell returned from medical leave after her medical procedure and her first written disciplinary warning. Mrs. Councell returned from medical leave at some time in January 2009, and received this first written warning on January 29, 2009.

This Court does not find this contention to be probative of causal nexus for multiple reasons.

First, while Mrs. Councell may have been on medical leave for a procedure relating to her prolapsed bladder immediately preceding the incident which led to her first written warning, the record evidence shows that Mrs. Councell suffered from prolapsed bladder for nearly her entire tenure at HLC, and actually had undergone a bladder tuck in 1996; very close to the time when she began her employment with HLC. Mrs. Councell had, by her own testimony, been subject to lifting restrictions throughout this entire time, thus making this medical procedure simply a part of a larger medical condition which had been present for over a decade of Mrs. Councell's employment. Thus, considering the proximity in time of Mrs. Councell's procedure to the incident which led to the first written warning would be to focus on an incorrect timeline.

Secondly, while Mrs. Councell characterizes the written warning of January 29, 2009 as the first disciplinary incident on Mrs. Councell's record, this characterization oversimplifies the record. In fact, in 2007, a disciplinary incident occurred wherein a customer sent a letter to HLC complaining about the customer service that he received at the outlet store. Mrs. Councell was implicated as being rude to this customer. While this incident did not lead to a written warning, it was a disciplinary incident regarding Mrs. Councell's unprofessional behavior. The incident

which occurred in January 29, 2009 was also an incident relating to allegedly unprofessional behavior, as were all of the disciplinary incidents in the record. Thus, there is no evidence that an initial disciplinary incident happened within a time proximate to the onset of an alleged disability when there had been no similar disciplinary incidents prior to any onset. It seems, in fact, that a reasonable escalation in the seriousness of discipline occurred based upon continued similar behavior.

Mrs. Councell also attempts to connect her lifting restrictions to her termination by arguing that HLC seemingly exploited Mrs. Councell's difficulty with lifting after her surgery in an apparent attempt to set her up for failure at work so that she could be terminated. The first allegation of this nature is that, before Mrs. Councell's surgery in December 2008, she allegedly had received help from subordinates at the outlet in performing some of the "manual labor duties associated with [her] position. However, after her surgery, this assistance was taken from her." (ECF No. 63 *3.) Again, this allegation misstates and mischaracterizes the record evidence. The only support for this statement that can be found in the record is testimony regarding a single incident, Mrs. Councell's reaction to which led to her written warning of January 29, 2009, when Mr. Timmons had been assigned by Rich Brinkman to gather products for a photo shoot, and Mrs. Councell felt that she was shorthanded in the store and that

she needed help which she was unable to obtain because Mr. Timmons was otherwise engaged. However, there is no evidence that this occurred more than this one time, nor is there evidence that even this incident represented a situation where Mrs. Councell was not permitted to have assistance with manual labor from subordinates. Mrs. Councell testified that she was shorthanded and that she "had to do work in my office to catch up on" and that "Rich Brinkman had given [Mr. Timmons] a job to do without finding out from me whether or not he was needed in the store or if I needed him." (ECF No. 63 Ex. B *83.) This generic testimony about needing help in the store during this single incident is insufficient to support Mrs. Councell's allegation in this regard.

Mrs. Councell's second support for her contention that she was set up for failure is the alleged "10-point memo" drafted by Rich Brinkman and presented to Mrs. Councell in a performance improvement meeting which she contends "mandated that 50% of [Mrs. Councell's] work week be spent manipulating heavy pottery." (ECF No. 63 *4.) Again, this mischaracterizes the record evidence and this Court does not find this statement to be supported by any evidence. The alleged "10-point memo" given to Mrs. Councell by Mr. Brinkman pursuant to a performance improvement meeting on July 9, 2009 lists the ten things that Mr. Brinkman needed to be Mrs. Councell's focus in her position. Point 6 of this memo instructs Mrs. Councell to be "in store 50% of the time working on displays,

stock, and customers." (ECF No. 63 Ex. I.) There is no evidence offered by Mrs. Councell that this point was communicated to her to mean what she contends that it means, nor does a reading of the plain language of this point lead to any possible reasonable conclusion that 50% of Mrs. Councell's time was expected to be devoted to moving heavy pottery. There is not even any mention at all of moving pottery.

Finally, this Court believes that it is important to note that, aside from the lack of evidence offered by Mrs. Councell to support her allegation that HLC "set her up" for failure in her job responsibilities by exploiting her lifting restrictions, the theory in itself is not reasonably connected to Mrs. Councell's termination. The reason that HLC provides for terminating Mrs. Councell is that there had been multiple customer service and professionalism problems with Mrs. Councell over the final few years of her employment that she had failed to correct, the culmination of these problems occurring in an altercation with Ms. Shreve wherein Mrs. Councell was deemed to again have acted unprofessionally toward her supervisor. It defies reason that HLC would intentionally exploit Mrs. Councell's lifting restrictions in order to "set her up" for unsatisfactory work performance so that she could be pretextually fired, but then fire her for a reason totally unrelated to her ability to perform the requirements of her position. This Court cannot rely on such an argument in deciding

summary judgment.  <u>Celotex</u>, 477 U.S. at 330 n.2 (inferences drawn in the non-moving party's favor must be "reasonable" to defeat summary judgment).  Thus, Mrs. Councell has failed to satisfy her burden of showing a causal connection between any alleged disability from which she suffered and her termination.[15]

    c.  <u>Pretext</u>

As a final matter, even if the Mrs. Councell had satisfied her burden to present a prima facie case against HLC with regard to any of the WVHRA claims, the defendant is nonetheless entitled to summary judgment because Mrs. Councell has failed to present any evidence which could allow a reasonable juror to find that the defendant's proffered LNDR was a pretext for discrimination.  The defendant has satisfied its burden of production to proffer a LNDR

---

[15]Mrs. Councell also makes a number of allegations in her briefs which seem to argue that HLC failed to make a reasonable accommodation for her lifting restrictions.  Initially, this Court notes that no failure to accommodate claim was made in the plaintiffs' complaint.  Further, this Court previously determined that Mrs. Councell is not disabled.  <u>See</u> <u>Alley v. Charleston Area Med. Ctr. Inc.</u>, 216 W. Va. 63, 71 (2004) (elements of failure to accommodate claim include that plaintiff is a "qualified person with a disability.").  Finally, it is clear from the record that Mrs. Councell never requested any type of accommodation whatsoever, and there is no evidence that any of her supervisors were aware that she may have needed one.  <u>Id.</u> (element of failure to accommodate claim that "the employer knew or should have known of the plaintiff's need").  Ms. Shreve was aware of Mrs. Councell's lifting restrictions, but the record evidence makes clear that lifting heavy objects was not deemed to be an essential part of Mrs. Councell's job, and Ms. Shreve simply cautioned her against it.  <u>See</u> ECF No. 61 Ex. C *153, 155, 178, Ex. D *91, 166-67 and <u>Alley</u>, 216 W. Va. at 71 (employee must need accommodation "in order to perform essential functions of a job" in order to sustain accommodation claim.).

by arguing that Mrs. Councell was terminated due to "repeated unprofessionalism." (ECF No. 60 *1.) HLC supports this LNDR with a complaint letter from a customer, dated December 11, 2007, which identifies Mrs. Councell as one of the employees who "chastised" and "admonished" him in his attempt to return merchandise.[16]  It also supports its position with multiple written warnings and evidence of employee counseling meetings held with Mrs. Councell regarding her professionalism with customers and coworkers over the year leading to her termination.

Mrs. Councell attempts to rebut this LNDR by arguing that the incidents cited were not handled correctly by HLC and were framed incorrectly to make Mrs. Councell look bad, when in actuality, her behavior was commonplace at HLC.  However, the record reveals that none of the incidents for which Mrs. Councell was disciplined were contrived; Mrs. Councell herself admits within her deposition that each of the incidents occurred, and while she disagrees with HLC's interpretation of them, she generally agrees that they occurred in the way that HLC says that they did.  Further, Mrs. Councell's own testimony reveals that she was aware that her behavior on multiple occasions was against company policy, and that HLC viewed it as

---

[16]Mrs. Councell argues that she is not mentioned by name in this letter. (ECF No. 63 *5 n.20.)  However, the letter specifically identifies the "assistant manager" as a party to the incident. (ECF No. 61 Ex. C *30-31.)  Further, plaintiffs' counsel conceded during Ms. Shreve's deposition, that the letter identified Mrs. Councell, just not by name.  (ECF No. 63 Ex. C *42.)

unprofessional.[17]  Thus, whether HLC handled the disciplinary decisions fairly or correctly, or whether, in hindsight, they would have or should have handled them differently is not within the purview of the WVHRA.  <u>Romney Hous. Auth. v. W. Va. Human Rights Comm'n</u>, 185 W. Va. 208, 212 ("the question is not whether an employment decision was essentially fair or whether it was made in accordance with pre-established procedures.  The question is whether the individual was discriminated against . . .").

There is no evidence presented, beyond conjecture, of discriminatory animus expressed against workers in any of Mrs. Councell's protected classes, nor is there evidence of a similarly situated worker being treated similarly and differently than non-protected class workers.  Mrs. Councell makes allegations of HLC's failure to tape record employee discipline meetings, and Rich Brinkman's refusal to honor her request to invite a member of human resources to a performance improvement meeting as evidence of pretext.  However, this Court is unable to see a reasonable connection between these two issues and the validity of Mrs. Councell's termination.  The occurrences of these meetings are well documented, and the content of the meetings likewise does not seem to be contested.  Notes were made, and Mrs. Councell's position on

---

[17]Again, Mrs. Councell's affidavit tells a different story, but this Court will not consider the affidavit statements which directly contradict deposition testimony for the reasons stated supra.

the matters discussed is noted. Further, while Mr. Brinkman informed Mrs. Councell that a member of human resources would not be present at the performance improvement meeting, the human resources department was carbon copied on all correspondence regarding this meeting, and Mrs. Councell does not seem to claim that anything occurred at this meeting which is denied by HLC.

Additionally, there is sufficient evidence on the record that Mrs. Councell was made aware of HLC's expectations with regard to professionalism, and that she was given numerous opportunities to give her side of the story and to meet with supervisors regarding the issues. Further, the incidents which led to discipline were all examples of consistently similar behavior on the part of Mrs. Councell.

While Mrs. Councell continually asserts that her behavior was commonplace, and that Ms. Shreve behaved in the same manner quite often but was not disciplined for it, this testimony does not serve to create a genuine issue of material fact that the defendant's LNDR is false. See Ford Motor Credit Co., 225 W. Va. at 777-78 (2010) (testimony that profanity was commonplace in the office and did not lead to discipline for others only serves to provide a "scintilla" of evidence that employer's proffered LNDR is pretext, which is insufficient to defeat summary judgment). Further, the only facts which are presented by Mrs. Councell to support these allegations are that Ms. Shreve's similar behavior went unpunished.

However, this cannot serve to support an allegation of pretext because Ms. Shreve is not a person outside of Mrs. Councell's claimed protected classes.  In fact, Ms. Shreve is a member of every single protected class that Mrs. Councell invokes in this case.  Ms. Shreve is older than Mrs. Councell, she is a woman, and she suffers from multiple ailments which could possibly be construed as "disabilities."  It appears that, while Mrs. Councell may not agree that it was fair for HLC's to act upon her behavior when they did and how they did, there is no evidence that their decision to do so was a pretext for any underlying purpose, be it discriminatory or otherwise.

    2.   <u>Insurance Discrimination Claim</u>

Count II, a claim for discrimination based upon Mrs. Councell's claims to HLC's health insurance plan, has been earlier determined to be a discrimination claim under ERISA § 510.  ERISA insurance discrimination claims under this section follow the <u>McDonnell Douglas</u> framework; i.e., a plaintiff must prove a prima facie case that: "(1) [s]he is . . . a participant in an employee benefit plan; (2) that she was qualified for the job; and (3) that she was discharged 'under circumstances that give rise to an inference of discrimination.'"  <u>O'Donnell v. Biolife Plasma Servs., L.P.</u>, 384 F. Supp. 2d 971, 973-74 (S.D. W. Va. 2005) (quoting <u>Blair v. Young Phillips Corp.</u>, 235 F. Supp. 2d 465, 473 (M.D. N.C. 2002)).  The defendant claims that Mrs. Councell has failed to show

evidence of any connection between her termination and her claims to the insurance plan and that Mrs. Councell herself admitted at her deposition that she did not believe that she was terminated due to her claims to the HLC insurance plan.  This Court agrees.

Mrs. Councell attempts to create an issue of material fact with regard to the causal connection element of her ERISA insurance discrimination claim by arguing that Ms. Shreve, Mrs. Councell's direct supervisor, had made negative comments in the past regarding other employees' claims to HLC's self-funded insurance program. This Court does not find that these comments are sufficient to create a genuine issue of material fact upon which a reasonable juror could conclude that HLC terminated Mrs. Councell due to her claims to the company insurance plan.  First, there is no evidence of Ms. Shreve acting on any of these comments against any employee. Secondly, the comments were not made in relation to, or at a time contemporaneous to Mrs. Councell's termination.  See Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) ("stray remarks in the workplace, while perhaps probative . . . ., cannot justify requiring an employer to prove its . . . decisions were based upon legitimate criteria.") (internal citations omitted).  Third, Mrs. Councell has failed to present evidence that Ms. Shreve was the decisionmaker in Mrs. Councell's termination.

Under the employment discrimination framework, an employer can only be held liable for the discriminatory animus of those who "possessed such authority as to be viewed as the one principally responsible for the decision" to make an adverse employment action. Hill v. Lockheed Martin Logistics Mgmt., 354 F. 3d 277, 290-91 (4th Cir. 2000). In Hill, the Fourth Circuit expressly held that discrimination statutes cannot be read to create liability for a company for the discriminatory motivation of a "biased subordinate," nor to allow that subordinate "who does not make the final or formal employment decision to become a decisionmaker simply because [s]he had a substantial influence on the ultimate decision or because [s]he has played a role, even a significant one, in the adverse employment decision." Id. Thus, in order to survive summary judgment, a plaintiff must "come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision." Id.

Mrs. Councell has presented no evidence to support an inference that Ms. Shreve was the actual decisionmaker in Mrs. Councell's termination. The record clearly establishes that, while Ms. Shreve reported incidents to her superiors and likely played a role in and influenced the final decision to terminate Mrs. Councell, she was not the final decisionmaker. Nor is there evidence to support an inference that the actual decisionmakers

blindly rubber-stamped the suggestions of Ms. Shreve. There was a process of discussion on multiple levels above Ms. Shreve, and it appears that she was not even involved in the final discussions with regard to Mrs. Councell's termination. See ECF No. 63 Ex. C *160; ECF No. 61 Ex. I *51-53, Ex. G *100-04. Thus, any animus that Ms. Shreve may have harbored toward those who made claims against the company insurance is not attributable to HLC as a whole.

Nor has there been any evidence presented to support an inference that any of the actual decisionmakers were motivated to terminate Mrs. Councell as a result of her insurance claims. Mrs. Councell admitted in her deposition testimony that she did not believe that she was terminated as a result of her insurance claims, and any allegations advanced by Mrs. Councell to support a contrary contention are purely conjecture unsupported by facts. Mrs. Councell's affidavit, as well as the plaintiffs' briefing of the defendant's motion for summary judgment, make arguments that claims on HLC's insurance plan took profits away from HLC and that these added costs were passed along to the employees rather than absorbed by the company. However, there is no evidence offered to support these contentions.[18] As a result, Mrs. Councell has failed

---

[18]Mrs. Councell cites to multiple sections of the deposition transcripts of decisionmakers and company representatives to support this contention. However upon inspection of the cited portions of these depositions, this Court has been unable to find even a mention of HLC's insurance policy.

to present evidence which could allow a reasonable juror to find a causal nexus between Mrs. Councell's claims to HLC's insurance plan and her termination.

3. Defamation

Count IV is a claim for defamation.[19]  The defendant claims that this count fails as a matter of law due to statutory and common law privileges, and because Mrs. Councell has again failed to present evidence to support her claim.  Mrs. Councell failed to respond to the defendant's arguments with regard to this claim. Therefore, under Celotex and Anderson, she has failed to support her claim with facts showing that there is an issue of genuine fact for trial.  477 U.S. 317; 477 U.S. 242.  The plaintiff "may not rest upon the mere allegations or denials of his pleading" to defeat summary judgment. Anderson, 477 U.S. at 256.  Thus, summary judgment must be granted to the defendant on this claim as well.

4. Intentional and Negligent Infliction of Emotional Distress

Count V of the complaint raises a claim of intentional and negligent infliction of emotional distress.  This claim, too, is insufficiently supported by facts and must be dismissed.  The only support that Mrs. Councell provides for this claim in opposing summary judgment is in a footnote which argues that the facts given regarding Mrs. Councell's termination "are so egregious that a jury

---

[19]The first amended complaint does not contain a Count III.

may fairly conclude emotional distress flows from these events."
(ECF No. 63 *11 n.39.)  However, in addition to providing no facts
to support that emotional distress actually occurred, this argument
misstates the requirements for a claim of emotional distress in
this case.  <u>Minshall v. Health Care Retirement Corp. of Am.</u>, 208 W.
Va. 4, 9 (2000).

Both negligent and intentional infliction of emotional
distress claims require that a plaintiff provide evidence that she
suffered "severe emotional distress" in order to be successful.
<u>Marlin v. Bill Rich Constr.</u>, 198 W. Va. 635, 652 (1996) ("A claim
for emotional distress without an accompanying physical injury can
only be successfully maintained upon a showing by the plaintiffs in
such an action of facts sufficient to guarantee that the claim is
not spurious and upon a showing that the emotional distress is
undoubtedly real and serious.").  Mrs. Councell has not even
attempted to make such a factual showing in this case.  Simply
stating that the defendant's actions were so "egregious" that a
reasonable person could conclude that Mrs. Councell suffered severe
emotional distress is insufficient and is not supported by any
facts.  <u>See</u> <u>Price v. City of Charlotte</u>, 93 F. 3d 1241 (4th Cir.
1996) (<u>cert. denied</u>) (reversing award for emotional distress
because the evidence did not show any demonstrable emotional injury
outside of the plaintiff's own testimony).

Further, this Court finds that, as a matter of law, the actions of HLC in this case did not rise to the high level of "outrageousness" which is "more than unreasonable, unkind or unfair, [but which] truly offend[s] community notions of acceptable conduct" that is required to support this claim. Philyaw v. E. Associated Coal Corp., 219 W. Va. 252, 258 (2006). Thus, summary judgment must be granted to the defendant on this count.

5. Spoliation

Count VI of the complaint raises a spoliation claim. Spoliation is a stand-alone tort that creates liability when a party intentionally destroys, materially alters, or fails to retain evidence, and the inability to present such evidence then prejudices the plaintiff's ability to make out a legal claim. Mace v. Ford Motor Co., 221 W. Va. 198, 202 (2007). The focus of this claim is a memorandum written by Richard Brinkman and placed in Mrs. Councell's personnel file and the lack of positive feedback in Mrs. Councell's file. The memorandum by Mr. Brinkman details discussions with Mrs. Councell wherein the two discussed a disciplinary incident regarding a tent sale in October 2009. Mrs. Councell claims that Mr. Brinkman destroyed his handwritten notes when he created the memorandum. She further contends that, in failing to place positive notes and "words of praise from customers" in Mrs. Councell's file, HLC spoliated this evidence which would have worked in their favor.

In order to sustain a spoliation claim, Mrs. Councell must show:

> (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action.

Id. (internal citations omitted).

Mrs. Councell has failed to present evidence which could satisfy these required elements. First, while this Court cannot say with confidence that litigation could not have been a "potential" at the time that Mr. Brinkman wrote his memorandum, there is no evidence that Mr. Brinkman had actual knowledge of potential litigation with regard to which his handwritten notes would be evidence. Further, Mr. Brinkman transcribed his notes into a memorandum, which is included in evidence, and there has been no offering of evidence to support a contention that the contents of the notes were such that they could be reasonably considered to be "vital" to Mrs. Councell's case.

With regard to the positive notes and words of praise from customers which were not included in Mrs. Councell's file, there is no evidence presented that HLC was under any obligation to place such notes in her file. Additionally, there is no evidence that such documents ever existed. While Mrs. Councell may believe that,

in order to create a balanced file, both positive and negative notes should be included, failure to create evidence when there was no duty to do so is not spoliation.

      6.  <u>Loss of Consortium</u>

Finally, because summary judgment has been granted to the defendant on all of Mrs. Councell's claims, so too must summary judgment be granted to the defendant on Mr. Councell's loss of consortium claim.  In West Virginia, loss of consortium claims are "derivative of the underlying tort claim with which [they are] brought" and recovery depends upon the success of the underlying tort claim.  <u>Dupont v. United States</u>, 980 F. Supp. 192, 195-96 (S.D. W. Va. 1997).

      V.  <u>Conclusion</u>

For the reasons stated above, the plaintiffs' motion for leave to file an amended complaint (ECF No. 45) is DENIED.  The defendant's motion to strike amended complaint (ECF No. 47) is GRANTED IN PART and DENIED IN PART as stated above.  The defendant's motion to deny the plaintiffs' motion to amend (ECF No. 47) is GRANTED.  The defendant's motion to enjoin the plaintiffs' state court action (ECF No. 47) is DENIED AS MOOT.  The defendant's motion for sanctions (ECF No. 47) is DENIED.  Further, the defendant's motion to stay defendant's obligation to respond to plaintiffs' complaint or amended complaint (ECF No. 49) is DENIED AS MOOT, and the defendant's motion for extension of page limit in

its motion for summary judgment (ECF No. 57) is GRANTED. The defendant's motions for summary judgment and amended motion for summary judgment (ECF Nos. 59 and 62) are GRANTED. All pending motions in limine, the plaintiffs' motion to strike defendant's motion in limine, and the defendant's motion for leave to file an additional motion in limine (ECF Nos. 64-67, 69, and 92) are DENIED AS MOOT. Finally, the plaintiffs' motion for disclosure of jury questionnaire and Rule 38 jury demand (ECF No. 79) is DENIED AS MOOT. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: March 15, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE